IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DENNIS A. BROWN,
    Petitioner,

vs.                                                Case No.: 5:07cv163/MCR/EMT

WALTER A. McNEIL,[1]
    Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

       This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Docs. 16, 18). Petitioner filed a reply (*see* Doc. 19).

       The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

       The relevant aspects of the procedural background of this case are established by the state court record (Doc. 18). Petitioner was charged by an amended information in the Circuit Court for Calhoun County, Florida, with one count of carrying a concealed firearm, a third degree felony, in violation of Florida Statute section 790.01(2), and one count of possession of a firearm by a

---

[1] Walter A. McNeil succeeded James McDonough as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

convicted felon, a second degree felony, in violation of section 790.23(1)(b), for conduct that occurred on October 5, 2002 (Doc. 18, Ex. A). Petitioner pleaded nolo contendere to the charges, and the judge sentenced him to two (2) years of community control followed by three (3) years of probation (Doc. 18, Exs. B, C). The original judgment and sentence was rendered on April 2, 2003, and an amended judgment and sentence was rendered on June 4, 2003 (*id.*). Petitioner did not appeal the judgment of conviction and sentence (Doc. 16 at 2).

On June 12, 2003, the State filed an affidavit of violation of community control, and a second amended affidavit was filed February 11, 2004 (Doc. 18, Exs. D, E). Petitioner pleaded nolo contendere to the violation (*see* Doc. 18, Ex. F; *see also* Doc. 18, Ex. H at 2). The court revoked Petitioner's community control and sentenced him to five (5) years of incarceration on the concealed firearm count and a concurrent term of ten (10) years of incarceration on the felon in possession count, with pre-sentence jail credit of seventy-three (73) days (*see* Doc. 18, Ex. F).

Petitioner appealed the judgment of conviction and sentence to the Florida First District Court of Appeal (First DCA). On February 3, 2005, the First DCA affirmed the judgment of conviction and sentence per curiam without written opinion, with the mandate issuing March 1, 2005 (Doc. 1 at 2; Doc. 16 at 2). Brown v. State, 894 So. 2d 245 (Fla. 1st DCA Feb. 3, 2005) (Table).

On June 20, 2005, Petitioner filed a motion for postconviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Doc. 18, Ex. H at 1, 9). The trial court held a limited evidentiary hearing (Doc. 18, Ex. I). The trial court denied Petitioner's motion on October 14, 2005 (*see* Doc. 1 at 3; Doc. 16 at 3). Petitioner appealed the decision to the First DCA, and the appellate court affirmed per curiam without written opinion on April 13, 2007, with the mandate issuing May 9, 2007 (*see* Doc. 1 at 3; Doc. 16 at 3). Brown v. State, 954 So. 2d 1158 (Fla. 1st DCA Apr. 13, 2007) (Table).

Petitioner filed the instant habeas action on May 21, 2007 (Doc. 1 at 6).

II. STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19.  In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2]Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case." Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it. Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683

(2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, --- U.S. --- 127 S. Ct. 2842, 2858, --- L. Ed. 2d ---

(2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claim.

III.   PETITIONER'S CLAIM

"Counsel was ineffective for advising him to plea where his convictions and sentences violate double jeopardy."

Petitioner claims that he received ineffective assistance of counsel based upon counsel's failure to advise him that convictions and sentences for carrying a concealed firearm and possession of a firearm by a convicted felon violated the Double Jeopardy Clause because the charges were based upon the same statutory provision and the same factual occurrence (Doc. 1 at 4, attached pages; Doc. 19 at 4–6). Petitioner states if counsel had advised him of the double jeopardy violation, the outcome of the proceeding would have been different (Doc. 1 at 4, attached pages; Doc. 19 at 6). Petitioner also alleges the trial court violated double jeopardy principles by sentencing him for both offenses (*id*.).

Respondent concedes that Petitioner raised the ineffective assistance of counsel claim and related double jeopardy claim in his Rule 3.850 motion in the state court (Doc. 16 at 4–5). Respondent contends Petitioner has failed to show that the state court decision was contrary to or an unreasonable application of Supreme Court law (*id*. at 5–9).

A copy of the trial court's written opinion denying Petitioner's Rule 3.850 motion was not included in the state court record, and the undersigned is not comfortable reviewing the state court decision without reviewing the opinion. Rather than delay the proceedings to facilitate production of a copy of the opinion, the undersigned will conduct a de novo review of the ineffective assistance of counsel claim and underlying double jeopardy claim.

When a defendant challenges a guilty plea based upon allegations of ineffective assistance of counsel, the two pronged standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) applies. The two components of an ineffectiveness claim under Strickland are performance and prejudice, and if an insufficient showing is made as to one, the court need not address the other. Strickland, 466 U.S. at 697. The focus of inquiry under the performance prong of the Strickland standard is whether counsel's assistance was "reasonable considering all the

circumstances." *See* Strickland, 466 U.S. at 691. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. Indeed, the Supreme Court warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. . . . Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts. That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

McMann v. Richardson, 397 U.S. 759, 769–70, 90 S.Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970).

Furthermore, "[C]ounsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." Wofford v. Wainwright, 748 F.2d 1505, 1508 (11th Cir. 1984) (per curiam). An attorney's responsibility is to investigate and to evaluate his client's options in the course of the subject legal proceedings and then to advise the client as to the merits of each. Stano v. Dugger, 921 F.2d 1125, 1152 (11th Cir. 1991) (citations omitted). In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56–57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting McMann, 397 U.S. at 771). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano, 921 F.2d at 1150–51. Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must prove that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill, 474 U.S. at 59. Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different. *Id.* at 59–60. While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must come forth with objective evidence to show that but for counsel's errors he would not have accepted the plea offer, and would have insisted on going to trial. *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). Conclusory, after-the-fact statements that Petitioner would not have pled guilty do not meet this requirement, nor is it sufficient to say that Petitioner would have received a less harsh sentence had he not accepted the plea offer. *See* Diaz, 930 F.2d at 835; *see also* Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

To determine whether Petitioner's counsel performed unreasonably by failing to advise Petitioner that double jeopardy principles barred convictions for carrying a concealed firearm and possession of a firearm by a convicted felon, the court must determine whether a meritorious double jeopardy argument existed. The Double Jeopardy Clause protects a defendant from multiple punishments for the same offense. Missouri v. Hunter, 459 U.S. 359, 365–66, 103 S. Ct. 673, 678, 74 L. Ed. 2d 535 (1983); North Carolina v. Pearce, 395 U.S. 711. 717, 89 S. Ct. 2072, 2076, 23 L. Ed. 2d 656 (1969), *overruled on other grounds*, Alabama v. Smith, 490 U.S. 794, 109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989). "Where the same conduct violates two statutory provisions, the first step in the double jeopardy analysis is to determine whether the legislature . . . intended that each violation be a separate offense." Garrett v. United States, 471 U.S. 773, 778, 105 S. Ct. 2407, 2411, 85 L. Ed. 2d 764 (1985)). Although the Double Jeopardy Clause does not flatly prohibit the legislature from punishing the same conduct under two different statutes, federal courts assume that the legislature ordinarily does not intend to do so "'in the absence of a clear indication of contrary legislative intent.'" Hunter, 459 U.S. at 366 (quoting Whalen v. United States, 445 U.S. 684, 691–92, 100 S. Ct. 1432, 1437–38, 63 L. Ed. 2d 715 (1980)); *see also* Garrett, 471 U.S. at 779 (holding that multiple punishments are permissible "when the legislative intent is clear from the face

of the statute or the legislative history"); Ohio v. Johnson, 467 U.S. 493, 499 n.8, 104 S. Ct. 2536, 2541 n.8, 81 L. Ed. 2d 425 (1984) ("[I]f it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end." (emphasis added)).  If no clear intention is evident, the provisions are analyzed under the "same elements" test announced in Blockburger v. United States, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), which "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." United States v. Dixon, 509 U.S. 688, 696, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556 (1993).  Although the court will decide under federal law whether a double jeopardy violation has occurred, it must accept the Florida courts' interpretation of the state's own statutes.  Hunter, 459 U.S. at 368.

The Eleventh Circuit summarized its interpretation of Supreme Court law regarding double jeopardy as follows:

> To summarize, our review of a potential double jeopardy violation arising from a single prosecution is a two-stage analysis.  First, we ascertain whether there exists a clear legislative intent to impose cumulative punishments, under separate statutory provisions, for the same conduct.  If a clear indication of such intent exists, our inquiry is at an end and the double jeopardy bar does not apply.  If there is no clear indication of legislative intent to impose cumulative punishments, we examine the relevant statutes under the same-elements test of Blockburger.  Under that test, if each statutory offense requires proof of an element not contained in the other, the offenses are not the "same" and double jeopardy is no bar to cumulative punishment.

Williams v. Singletary, 78 F.3d 1510, 1513 (11th Cir. 1996).

The analysis of legislative intent begins by examining the language of the criminal statutes themselves.  At the time of Petitioner's offense conduct, October 5, 2002, the Florida statute concerning carrying concealed weapons provided, in relevant part:

> 790.01.  Carrying concealed weapons
> . . . .
> (2) A person who carries a concealed firearm on or about his or her person commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 790.01 (West 2002).

The Florida statute concerning possession of firearms by felons provided, in relevant part:

> 790.23.  Felons and delinquents; possession of firearms or electric weapons or devices unlawful

Page 10 of 12

(1)  It is unlawful for any person to own or to have in his or her care, custody, possession, or control any firearm or electric weapon or device, or to carry a concealed weapon, including a tear gas gun or chemical weapon or device, if that person has been:

(a)  Convicted of a felony in the courts of this state;

(b)  Found, in the courts of this state, to have committed a delinquent act that would be a felony if committed by an adult and such person is under 24 years of age.
. . . .
(3)  Any person who violates this section commits a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

Fla. Stat. § 790.23 (West 2002).

The language of the aforementioned statutes provides no answer to the question of whether the Florida legislature intended to punish carrying a concealed firearm and possession of a firearm by a felon as separate offenses; therefore, the court will look to Florida's rules of statutory construction. The version of those rules in effect at the time Petitioner committed the criminal offenses provided, in relevant part:

775.021.  Rules of construction

(1)  The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
. . . .
(4)(a)  Whoever, in the course of one criminal transaction or episode, commits an act or acts which constitute one or more separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.

(b)  The intent of the Legislature is to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction and not to allow the principle of lenity as set forth in subsection (1) to determine legislative intent. Exceptions to this rule of construction are:

1. Offenses which require identical elements of proof.

2. Offenses which are degrees of the same offense as provided by statute.

>3. Offenses which are lesser offenses the statutory elements of which are subsumed by the greater offense.

Fla. Stat. § 775.021 (West 2002). Based upon this language, it is clear that the Florida Legislature expressly intended to convict and sentence a defendant for each offense he commits during the course of a single criminal episode, with three exceptions to that rule. Fla. Stat. § 775.021(4)(b). The exceptions adopt the Blockburger test. *See* State v. Weller, 590 So. 2d 923, 925 (1991).

Analysis of the respective criminal statutes in this case shows the absence of a double jeopardy violation as each offense requires proof of an element that the other does not. As applicable to the offenses charged in the amended information, the offense of possession of a firearm by a convicted felon has two statutory elements: (1) Petitioner had been convicted of a felony, and (2) after the conviction Petitioner knowingly owned or had in his care, custody, possession, or control a firearm (*see* Doc. 18, Ex. A). Fla. Stat. §790.23; Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Two: Instructions on Crimes, Chapter 10 Weapons Offenses, § 10.15. Felons Possessing Weapons (2002) (instruction adopted in 1981 and amended in 1989 and 1992). The offense of carrying a concealed firearm has two statutory elements: (1) Petitioner knowingly carried on or about his person a firearm, and (2) the firearm was concealed from the ordinary sight of another person. Fla. Stat. Ann. § 790.01; Florida Standard Jury Instructions in Criminal Cases, Fourth Edition, Part Two: Instructions on Crimes, Chapter 10 Weapons Offenses, § 10.1. Carrying Concealed Weapons (2002) (instruction adopted in 1981 and amended in 1989).

An element of possession of a firearm by a convicted felon, but not carrying a concealed firearm, is that Petitioner had been convicted of a felony. An element of carrying a concealed firearm, but not possession of a firearm by a convicted felon, is that the firearm carried by Petitioner was concealed from the ordinary sight of another person. Accordingly, the charges do not become the same offense under the Blockburger test, and the Double Jeopardy Clause was not violated. *See* State v. Maxwell, 682 So. 2d 83, 84 (Fla. 1996) (multiple convictions for carrying a concealed firearm, possession of a short-barreled shotgun, and possession of a firearm by a convicted felon do not violate the constitutional protection against double jeopardy); State v. Craft, 685 So. 2d 1292, 1294 (Fla. 1996) (conviction for carrying a concealed weapon and possession of firearm did not violate § 775.021(4)(a) or Blockburger); M.P. v. State, 682 So. 2d 79, 80–82 (Fla. 1996)

(adjudications of delinquency for both carrying a concealed weapon and possession of a firearm by a minor, in connection with the same weapon and same incident, do not violate double jeopardy). In light of the determination that convictions for both offenses did <u>not</u> violate double jeopardy principles, Petitioner's counsel did not perform unreasonably by failing to advise Petitioner that the convictions <u>did</u> violate double jeopardy.  Additionally, Petitioner has failed to demonstrate that the trial court violated double jeopardy principles by convicting and sentencing him for both offenses. Therefore, Petitioner is not entitled to federal habeas relief.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Walter A. McNeil is substituted for James McDonough as Respondent.

And it is respectfully **RECOMMENDED**:

That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

At Pensacola, Florida, this <u>14th</u> day of July 2008.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**